UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUCAS RODDY**<br>**(DOC# 458846)** | **CIVIL ACTION** |
| **VERSUS** | |
| **BURL CAIN, WARDEN,**<br>**ET AL** | **NO. 10-800-C-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, May 12, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| LUCAS RODDY<br>(DOC# 458846) | CIVIL ACTION |
| VERSUS | |
| BURL CAIN, WARDEN,<br>ET AL | NO. 10-800-C-M2 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the Petition for Writ of Habeas Corpus (R. Doc. 1) and the "Supplemental Memorandum of Law in Support of Roddy's Pro Se Habeas Petition" (R. Doc. 10) filed by petitioner, Lucas Roddy ("Roddy" or "petitioner"). The State of Louisiana ("the State") has filed an opposition (R. Doc. 14) to Roddy's habeas petition.

## FACTS & PROCEDURAL BACKGROUND

On November 6, 2001, a grand jury returned a true bill, charging Roddy with first-degree murder in violation of La. R.S. 14:30. Roddy was formally arraigned and pled not guilty on December 3, 2001. Prior to trial, the charge against Roddy was amended to one count of second degree murder in violation of La. R.S. 14:30.1, to which charge Roddy also pled not guilty. Following a jury trial, Roddy was found guilty of second degree murder on September 19, 2002. The trial judge ordered that a pre-sentence investigation report be completed prior to sentencing. On October 22, 2002, Roddy filed a motion for a new trial,[1] a motion to substitute counsel, and a motion to continue his sentencing hearing. The trial court granted his motion to substitute counsel and ruled that his motion to continue

---

[1] He also filed an amended motion for new trial on October 29, 2002.

1

sentencing was moot due to the filing of a motion for new trial. The trial court denied Roddy's motion for new trial on January 24, 2003. Roddy was subsequently sentenced on January 27, 2003, to life imprisonment at hard labor without the benefit of probation, parole or suspension of sentence with credit for time served. At sentencing, Roddy was specifically informed that he had two (2) years from the date of his conviction and sentence becoming final within which to seek an application for post-conviction relief.[2]

Roddy ultimately perfected his appeal of his conviction and sentence to the First Circuit Court of Appeals on June 17, 2005. In his appeal, he alleged only one assignment of error – that the trial court erred in denying his motion for new trial, which was based upon the grounds that his counsel labored under a conflict of interest from his past representation of the State's main witness, which rendered him unable to effectively represent Roddy and thereby affected the outcome of Roddy's trial. The First Circuit affirmed Roddy's conviction and sentence on December 22, 2005.[3]

On November 3, 2006, Roddy filed his initial application for post-conviction relief,

---

[2] Roddy filed a notice of intent to appeal with the trial court on January 28, 2003, which was signed by the trial judge on January 31, 2003, setting an appeal return date of March 28, 2003. Later that year, on December 19, 2003, he filed a Motion to Abate Appeal Pending Remand to the Trial Court with Attached Motion for New trial with the Louisiana First Circuit Court of Appeals, which was denied on January 27, 2004. On January 21, 2004, the Ascension Parish Clerk of Court filed a motion to dismiss plaintiff's appeal for failure to pay the costs. The state trial court set that matter for hearing on February 18, 2004; following the hearing, the Clerk of Court's motion to dismiss plaintiff's appeal was granted on March 17, 2004. The trial judge informed Roddy, however, that if he showed he was indigent, the court would grant him indigent status for appeal, and following a hearing on April 20, 2004, Roddy was granted indigent status for appeal purposes. Roddy then filed a writ application with the First Circuit Court of Appeals, requesting a writ of mandamus seeking review of the trial court's granting of the Clerk of Court's motion to dismiss his appeal. The First Circuit granted that writ application on January 27, 2004, and noted that Roddy's filing of his motion to determine his indigent status for appeal purposes made moot the Clerk of Court's motion to dismiss his appeal.

[3] On May 4, 2006, Roddy filed a pro se writ of mandamus with the state trial court, demanding certain records be considered necessary for him to prepare his post-conviction relief application. The state trial court set that writ request for hearing on June 19, 2006. That hearing date was subsequently continued without date when the trial court was informed that Roddy had retained counsel.

wherein he alleged that there was insufficient evidence presented at trial to support his conviction, that he received ineffective assistance of counsel in several respects, and that his right to testify in his own defense was violated by his counsel who willfully disregarded petitioner's alleged requests to testify.

On February 7, 2007, Roddy filed a first supplemental brief in support of his post-conviction relief application, alleging that his counsel failed to interview potential witnesses and make an independent investigation of the facts and circumstances of the case, including locating witnesses who could have impeached the prosecution's witnesses. On April 9, 2007, the state trial court denied Roddy's application for post-conviction relief on the basis that it was untimely-filed. On May 4, 2007, Roddy filed a motion to reconsider the trial court's ruling dismissing his application for post-conviction relief as untimely, which was set for hearing on August 21, 2007.

Around the same time that he filed his motion to reconsider, Roddy also applied for a supervisory writ to the First Circuit on May 8, 2007, seeking review of the trial court's dismissal of his post-conviction relief application. On July 9, 2007, the First Circuit granted his writ application, vacated the trial court's order dismissing his post-conviction relief application as untimely, and remanded for the trial court to further consider the post-conviction relief application.

On July 6, 2007, Roddy filed an application for post-conviction DNA testing pursuant to La. C.Cr.P. art. 926.1. On July 18, 2007, he also filed a Second Supplemental Application for Post-Conviction Relief, wherein he deleted his original contention of insufficient evidence to support his conviction and added a contention that the State failed to produce exculpatory evidence. Prior to the hearing on Roddy's application for DNA

testing and his Second Supplemental Application for Post-Conviction Relief, Roddy filed third and fourth supplemental post-conviction relief applications on August 7, 2008 and January 21, 2009 respectively, wherein he alleged additional *Brady* violations by the State and by law enforcement officers.

Following a hearing on March 19-20, 2009, the trial court denied Roddy's original and supplemental PCR applications as well as his application for post-conviction DNA testing, and entered judgment regarding same on April 28, 2009.[4] On April 29, 2009, Roddy applied for a supervisory writ to the First Circuit concerning the trial court's denial of his request for DNA testing. Relative to the trial court's denial of his original and supplemental post-conviction relief applications, he also filed a Notice of Intention to Apply to the First Circuit for Writs and for an Extension of the Return Date for thirty (30) additional days. The trial court granted that motion and set a return date of June 30, 2009, for Roddy to file his writ application. Roddy subsequently sought and was granted an extension of time to file a supplemental brief in support of his writ application with the First Circuit, allowing him until August 31, 2009 to file his supplemental brief.

The First Circuit ultimately denied Roddy's writ application without written opinion on October 12, 2009, and mailed him notice of its judgment on that same date. Roddy then

---

[4] In denying Roddy's request for post-conviction DNA testing, the trial court concluded:

> During the trial of this matter, there was evidence presented by the State that clothing found in the barbeque pit at Babin's home appeared to be similar to the clothing worn by the shooter. There was no clear, unequivocal evidence that the clothing found was actually worn by the perpetrator of the murder. Therefore, this Court found that DNA testing would not be evidence of actual innocence and testing was not warranted.

See, Ruling found at Appendix Item "B", to Roddy's Pro Se Application for Supervisory Writ of Review, 2009-KW-0763.

filed a writ application with the Louisiana Supreme Court on November 13, 2009,[5] which was denied on November 5, 2010, without written opinion.[6] In his writ application to the Louisiana Supreme Court, Roddy asserted all of the claims that he had presented in his original and supplemental post-conviction relief applications, including a claim that his counsel was ineffective in failing to arrange for independent DNA testing of various items of evidence. Roddy did not, however, assert any arguments in his writ application concerning whether the trial court had erred in denying his request for post-conviction DNA testing.

On February 1, 2010, Roddy filed a second Application for Post-Conviction Relief with the trial court, seeking DNA testing of certain clothing under La.C.Cr.P. art. 926.1 on the basis that "newly discovered evidence" suggests the clothing sought to be tested was the actual clothing worn by the individual that shot and killed the victim in question. The trial court denied Roddy's second Application for Post-Conviction Relief on February 5, 2010, on the basis that the DNA testing issues presented therein had been previously addressed by the trial court in its April 28, 2009 judgment on his original and supplemental PCR applications and that his second PCR application filed on February 1, 2010 was

---

[5] Although the Louisiana Supreme Court's notice of filing that was mailed to Roddy on November 24, 2009 indicates that his writ application was received and filed on November 24, 2009, the notice also indicates that his writ application was postmarked at the Louisiana State Penitentiary on November 13, 2009. A copy of the envelope in which Roddy mailed his writ application to the Louisiana Supreme Court also reflects that November 13, 2009 postmark. Applying the prison mailbox rule, November 13, 2009 is therefore the filing date of Roddy's writ application with the Louisiana Supreme Court. *See, Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006)(the court found that "the Louisiana Supreme Court has applied the prison mailbox rule with unfailing consistency as a matter of state law"); *Terrick v. Cain*, 2008 WL 4297064 (E.D. La. 2008)(The prison mailbox rule is to be employed in ascertaining the filing date of a prisoner's Louisiana state court pleadings in the context of determining the timeliness of his federal habeas corpus application).

[6] The Louisiana Supreme Court's opinion simply states, "Denied." *See, State ex rel. Roddy v. State,* 2009-2534 (La. 11/5/10), 50 So.3d 818.

5

therefore repetitive and subject to denial pursuant to La.C.Cr.P. art. 930.4(D). On February 18, 2010, Roddy placed in the prison mail service a "Motion to Abate Pending Post Conviction Relief Article 926.1 Petition Attached Motion for District Attorneys File," requesting that his PCR application be abated until the State provided certain files to enable him to prove his claim of "newly discovered evidence." On February 24, 2010, the trial court denied that "public records request" as a civil matter that should not proceed in criminal court.

On April 8, 2010, Roddy filed an application for supervisory writs to the First Circuit wherein he argued that the trial court erred in holding that he could not proceed with his public records request. The First Circuit denied that writ application on July 6, 2010, noting that, although Roddy would be entitled to a copy of the document sought in the criminal proceeding given his pending application for post-conviction relief, he was not entitled to the requested document because he had not established a "particularized need." On June 25, 2010, Roddy also filed another supervisory writ application with the First Circuit arguing that the trial court erred in holding that his second Application for Post-Conviction Relief filed on February 1, 2010 was repetitive in light of "newly discovery evidence" allegedly supporting his request for DNA testing. On September 2, 2010, without written opinion, the First Circuit denied that writ application as well as a motion that Roddy had filed seeking to amend his June 25, 2010 writ application.

On August 10, 2010, Roddy filed a writ application with the Louisiana Supreme Court, seeking review of the First Circuit's writ denial relating to his public records request. On September 23, 2010, he also filed a writ application with the Louisiana Supreme Court seeking review of the First Circuit's decision relating to the denial of his second Post-

6

Conviction Relief Application concerning his request for DNA testing based upon alleged "newly discovered evidence."[7] According to the State's opposition in the present habeas matter, both of Roddy's writ applications filed with the Louisiana Supreme Court on August 10, 2010 and September 23, 2010 remain pending before the Louisiana Supreme Court.

On November 23, 2010, Roddy placed into the prison mail system his present habeas petition for filing with this Court. Following enrollment of counsel, he filed a supplemental memorandum in support of that habeas petition on March 14, 2011.[8] The State opposes Roddy's habeas petition and contends that it should be dismissed because it is a mixed petition in that one of Roddy's claims has not been exhausted through the state court system, because his petition was untimely-filed, and because his exhausted claims lack merit.

## LAW & ANALYSIS

**I.     Exhaustion:**

Pursuant to 28 U.S.C. §2254(b)(1)(A), an application for a writ of habeas corpus shall not be granted unless it appears that the applicant has exhausted the remedies available in the state courts. 28 U.S.C. §2254(b)(1)(A). This exhaustion requirement is

---

[7] The Louisiana Supreme Court's notice mailed to Roddy on September 28, 2010, indicates that his writ application was received and filed on September 28, 2010; however, the filing was postmarked on September 23, 2010. Thus, under the prison mailbox rule, the filing date of such writ application is September 23, 2010.

[8] In his original habeas petition, Roddy raises the following issues: (1) ineffective assistance of counsel because his counsel failed to investigate and interview witnesses or call exculatory witnesses to testify, failed to arrange for independent DNA testing of various items of evidence, and failed to object to the constructive amendment of the grand jury indictment; (2) denial of the right to testify on his own behalf due to his counsel's misconception of the law; (3) a withholding of *Brady/Giglio* exculpatory material by the State; and (4) cumulative error. In his supplemental memorandum in support of habeas petition, he asserts a fifth issue – that the State's refusal to permit access to potentially exculpatory DNA evidence violated petitioner's rights under the Due Process Clause and that the Louisiana courts erred in holding that Roddy was not entitled to post-conviction DNA testing.

7

only satisfied when the substance of a federal habeas claim has been "fairly presented" to the highest state court. *Smith v. Quarterman*, 515 F.3d 392 (5th Cir. 2008)(The exhaustion of state court remedies requirement mandates that one petitioning for federal habeas relief from a state court conviction must have provided the highest court of the state with a fair opportunity to apply controlling federal constitutional principles to the same factual allegations, before a federal court may review any alleged errors).

      Although it appears that Roddy has exhausted the claims asserted in his original habeas petition filed herein on November 23, 2010 (*i.e.*, his ineffective assistance of counsel claim, his denial of right to testify claim, his *Brady/Giglio* claim, and his cumulative error claim), he has failed to exhaust a portion of the claim set forth in his "Supplemental Memorandum of Law in Support of Roddy's Pro Se Habeas Petition" (R. Doc. 10) that was filed on March 14, 2011. Specifically, the portion of that supplemental habeas claim contending that the state courts erred in denying him the right to post-conviction DNA testing of certain clothing in light of "newly discovered evidence" was not considered by the state appellate courts in his writ applications relating to his first post-conviction relief application (and its supplemental memorandums) and, although that issue was presented in Roddy's writ application relating to his second Post-Conviction Relief Application, such writ application, which was filed with the Louisiana Supreme Court on September 23, 2010, remains pending before the Louisiana Supreme Court at this time. As such, that portion of his habeas claims should be dismissed without prejudice for lack of exhaustion. *See, Clark v. Dretke*, 2003 WL 22510788 (N.D.Tex. 2003); *Graham v. Johnson*, 168 F.3d 762, 778 (5th Cir. 1999)("Unless the court decides to consider an unexhausted application, however, *Lundy* dictates that it be dismissed"), *cert. denied*, 529 U.S. 1097, 120 S.Ct.

1830, 146 L.Ed.2d 774 (2000); *Wilder v. Cockrell*, 274 F.3d 255 (5th Cir. 2001)("[B]ecause [petitioner] failed to exhaust [at least one of his claims], we vacate the conditional habeas relief and remand to the district court with instructions to dismiss [petitioner's] habeas application without prejudice"); *Rose v. Lundy*, 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

**II.     Timeliness of Roddy's remaining exhausted claims:**

Under 28 U.S.C. §2244(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a prisoner in custody pursuant to the judgment of a state court has a one (1) year period within which to file an application for a writ of habeas corpus. The limitation period runs from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. §2244(d)(1)(A). As provided by §2244(d)(2), the time during which a properly filed application for state post-conviction or other collateral review, with respect to the pertinent judgment or claim, is pending shall not be counted toward any period of limitation under this subsection. A "properly filed application is one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Scig,* 134 F.3d 146, 148-149 (3rd Cir. 1998); *Galindo v. Johnson*, 19 F.Supp.2d 697, 701 (W.D.Tex. 1998). A state application is "pending" during the intervals between the state court's disposition of a state habeas corpus petition and the petitioner's timely filing of petition of review at the next level. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

Roddy's conviction became final on January 21, 2006, thirty (30) days after the First Circuit Court of Appeals affirmed same since he did not appeal his conviction to the Louisiana Supreme Court. *See, Scott v. Hubert*, 2011 WL 802918 (5th Cir. 2011)(holding

9

that a judgment of conviction becomes final for AEDPA purposes (even if different for state law purposes) on the date that the time period during which the petitioner could have sought direct review of the appellate court's decision expires or thirty (30) days after the appellate court's decision).[9]  The AEDPA limitations period then ran for two hundred seventy-seven (277) days from January 21, 2006 until November 3, 2006, when Roddy filed his first application for post-conviction relief.  Subsequently, Roddy filed numerous supplemental briefs in support of his original post-conviction relief application (which contained all of the claims asserted herein by Roddy, except for his unexhausted claim that the state trial court erred in denying him post-conviction DNA testing based upon "newly discovered evidence), during which time the AEDPA limitations period was tolled.  The state trial court ultimately signed a judgment denying Roddy's original post-conviction relief application (and supplemental memorandums) on April 28, 2009.  Roddy then applied for writs to the First Circuit within the extensions of time granted.  The First Circuit denied his writ application and mailed Roddy notice of its judgment on October 12, 2009.

Pursuant to Louisiana Supreme Court Rule X, §5(a),[10] Roddy then had a period of

---

[9] *See also, Glover v. Cain,* 2010 WL 103762 (E.D.La. 2010); *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008)(citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003))(an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)); *Nelson v. Cain*, 2008 WL 108677 (E.D.La. 2008)("For purposes of AEDPA, pursuant to Section 2244(d)(1)(A) and Louisiana Supreme Court rule X, Section 5(a), petitioner's convictions and sentences became final thirty days after January 29, 2003, which was February 28, 2003, because he did not timely file a writ application with the Louisiana Supreme Court on or before that date").

[10] La. S.Ct. Rule X, §5 provides, in pertinent part:

> An application seeking to review a judgment of the court of appeal either after an appeal to that court, . . . or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal . . . No extension of time therefor will be granted.

La.S.Ct. Rule X, §5.

thirty (30) days, or until November 12, 2009, within which to file his writ application with the Louisiana Supreme Court.[11] The record, however, establishes that Roddy did not file his writ application with the Louisiana Supreme Court until November 13, 2009, which was one (1) day outside the required thirty (30) day time period.[12] Thus, under current Fifth Circuit precedent, Roddy's application for post-conviction relief ceased to be "properly filed" or "pending" so as to toll the AEDPA limitations period either on October 12, 2009 (when the First Circuit denied writs and mailed its notice of judgment) or on November 12, 2009 (when the Rule X thirty (30) day period for seeking writs from the Louisiana Supreme Court expired).[13] [14] Thereafter, a period of over one (1) year elapsed before Roddy filed his

---

[11] The thirty (30) day time period under La.Sup.Ct. Rule X, §5(a) begins upon the mailing of the notice of judgment of the court of appeal rather than upon the prisoner's receipt of the judgment. *Dempsey v. Cain*, 2010 WL 1254646 (E.D.La. 2010); *Glover v. Cain*, 2010 WL 103762 (E.D.La. 2010).

[12] Although the thirty (30) day limitations period under La.Sup.Ct. Rule X, §5(a) technically expired on Wednesday, November 11, 2009, that date was Veteran's Day in 2009. As such the U.S. Postal System was closed that day, and petitioner could not have "filed" his writ application with the Louisiana Supreme Court, pursuant to the prison mailbox rule, by placing it in the U.S. mail that day. Nevertheless, Roddy could have done so on Thursday, November 12, 2009, and his writ application would have been timely post-marked. Because he did not mail his writ application until Friday, November 13, 2009, it was not timely filed with the Louisiana Supreme Court pursuant to the prison mailbox rule.

[13] *See, Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000)(Petitioner's application for post-conviction relief in Louisiana courts ceased to be "properly filed" for purposes of tolling the limitations period for filing federal habeas petition when petitioner failed to file his application for supervisory writ of review from denial of post-conviction relief with Louisiana Supreme Court within thirty day period allowed by state court rule, as state court rule contained no exceptions or exclusions to time requirement and prohibited any extensions to thirty day period).

*See also, Bedford v. Miller*, 2007 WL 1870073 (E.D.La. 2007)(Internal citations omitted)("Although [the petitioner] sought Louisiana Supreme Court review of [the Louisiana First Circuit Court of Appeals' August 9, 2002] denial (which would ordinarily extend tolling), he did so in an untimely manner. La. S.Ct. Rule X §5(a) requires that an application seeking review must be filed within thirty days of the issuance of the lower court's judgment. That period ended on September 8, 2002. The earliest that Bedford's application can be considered filed is September 16, making it eight days too late. An untimely filing of appeal is not 'properly filed,' leaving the application no longer 'pending.' Therefore, the period from either August 9 or September 8, 2002, to the next application (signed on February 8, 2004) cannot be tolled under 28 U.S.C. §2244(d)(2). This period of at least 518 days exceeds the one-year limitation period of §2244(d)(2), even without taking into account petitioner's initial eight-month delay after his conviction became final"); *Zeno v. Cain*, 2009 WL 4329907 (W.D.La. 2009)(Petitioner's writ application to the Louisiana Supreme Court during post-conviction proceedings was untimely under Supreme Court Rule

11

federal habeas petition on November 23, 2010. Further, as shown above, a period of two hundred seventy-seven (277) days of the AEDPA limitations period had already elapsed between the date of finality of judgment and the date that Roddy commenced his post-conviction proceedings. As such, a total of over one (1) year and nine (9) months of

---

X, §5(a) and therefore was not a "properly filed" post-conviction pleading that could serve to toll the AEDPA limitations period. Statutory tolling under AEDPA became unavailable after either March 22, 2005 (when the Third Circuit Court of Appeals denied writs and mailed the Notice of Judgment) or on April 22, 2005 (when the 30-day period of limitations established by Rule X expired). Thereafter, a period of well over one-year elapsed from either of those dates before petitioner filed his habeas petition in June 2009. Further, a period of 245 days of the AEDPA limitations period had already elapsed between the date of finality of judgment and the date petitioner commenced his post-conviction litigation. Accordingly, almost five years elapsed untolled between the date petitioner's judgment of conviction became final and the date he filed his federal habeas petition, rendering it untimely. The Western District specifically noted that the Fifth Circuit, in *Williams*, did not address the issue of whether statutory tolling should be considered to have ceased as of the date that the intermediate appellate court denied relief, or the date that the Rule X time limit expired, because utilizing either date, the petitioner's habeas application was untimely-filed); *Jasmine v. Hubert*, 2008 WL 199867 (E.D.La. 2008)(The petitioner failed to comply with La.Sup.Ct. Rule X, §5(a) by filing an application for a supervisory writ outside the thirty (30) day window for "properly filed" review. There is no evidence to suggest that the Louisiana supreme Court consider petitioner's untimely application for a supervisory writ on the merits. Accordingly, petitioner's application for post-conviction relief was neither "properly filed" nor "pending" to toll the AEDPA statute of limitations, and the limitations period therefore ran untolled from September 2004, thirty (30) days after the court of appeals denied relief on August 9, 2004); *Rochelle v. Wilkinson*, 2007 WL 3071530 (W.D.La. 2007)("[A]s in *Williams*, petitioner's writ application in the Louisiana Supreme [Court] was not properly filed and could not serve to toll the limitations period. In other words, statutory tolling under §2244(d)(2) was no longer available after either October 28, 2005 (when the Third Circuit denied writs) or November 28, 2005 (when the period of limitations established by Rule X expired). Thereafter, a period of well over one-year elapsed from either of those dates before petitioner filed his federal *habeas* petition in May 2007." Petitioner's habeas petition was therefore time-barred under 28 U.S.C. §2244(d).

[14] An untimely writ application to the Louisiana Supreme Court, rejected via a two-word opinion, "Writ denied," by the state high court (similar to the present case, where the Louisiana Supreme Court's opinion simply stated, "Denied"), is generally deemed insufficient for purposes of interrupting the AEDPA limitations period. The reasoning is that such a summary dismissal provides insufficient evidence to support a finding that the Louisiana Supreme Court, rather than denying the application as untimely, exercised its supervisory jurisdiction and considered the merits, thereby "convert[ing] an untimely and unsuccessful application into one that would be considered timely filed for the purpose of tolling limitations under AEDPA." *Lee v. Cain*, 2009 WL 3319670 (E.D.La. 2009), quoting *Williams*, at 308, n. 6.

*Contrast, Lee*, at *5 (discussing the fact that the situation in *Lee* was distinguishable from that in *Williams* in that evidence arguably existed supporting a finding that the Louisiana Supreme Court did, in fact, exercise its supervisory jurisdiction and consider the merits of the petitioner's writ application during post-conviction proceedings, thereby converting the petitioner's untimely writ application into one which should be considered timely for purposes of tolling prescription. The evidence at issue was a dissent by one of the Louisiana Supreme Court justices, wherein she made no reference to the alleged untimeliness of the petitioner's writ application, but rather, addressed the merits of the petitioner's ineffective assistance of counsel claim).

untolled time elapsed between the date Roddy's judgment of conviction became final and the date he filed his habeas petition. Accordingly, the remainder of the claims in Roddy's original habeas petition and supplemental memorandum, which were exhausted before the state courts, were untimely-filed and should be dismissed with prejudice.[15]

## RECOMMENDATION

For the above reasons, it is recommended that the portion of petitioner's claim asserted in his Supplemental Memorandum of Law (R. Doc. 10) relating to the state trial court's denial of post-conviction DNA testing based upon "newly discovered evidence" should be **DISMISSED WITHOUT PREJUDICE** as unexhausted and that his remaining exhausted claims contained in his Petition for Writ of Habeas Corpus (R. Doc. 1) and Supplemental Memorandum (R. Doc. 10) should be **DISMISSED WITH PREJUDICE** as untimely-filed.

Signed in chambers in Baton Rouge, Louisiana, May 12, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[15] Although the one-year AEDPA limitations period is subject to equitable tolling in "rare and exceptional circumstances," the petitioner bears the burden of establishing that equitable tolling is warranted. *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). Equitable tolling applies "principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). Because Roddy has failed to allege or produce any evidence substantiating a claim of equitable tolling in his case, the undersigned finds that such doctrine does not apply herein to toll the limitations period. *See, Rochelle*, at *5, citing *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998)("[P]etitioner cannot rely on the doctrine of equitable tolling because his pleadings fail to present any [of] those 'rare and exceptional circumstances" which warrant the application of the equitable tolling doctrine").